# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| JASON D. ARTHUR, | Case No.: 2:19-cv-00015-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Respondent, | |

Before the Court is Petitioner Jason D. Arthur's Petition for Review (Dkt. 1), seeking review of the Social Security Administration's denial of his application for Social Security Disability Benefits for lack of disability. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On June 20, 2016, Jason D. Arthur ("Petitioner") filed an application for a period of disability and disability insurance benefits, alleging disability beginning April 5, 2013 (later amended to July 1, 2016). This claim was initially denied on January 4, 2017 and, again, on reconsideration on March 8, 2017. On March 20, 2017, Petitioner filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On February 14, 2018, ALJ Jesse K. Shumway held a hearing in Spokane, Washington, at which time Petitioner, represented by attorney Mark B. Jones, appeared and testified. Todd Gendreau, an impartial vocational expert, also appeared and testified at the same February 14, 2018 hearing.

On March 30, 2018, the ALJ issued a Decision denying Petitioner's claim, finding that he was not disabled within the meaning of the Social Security Act. Petitioner timely requested

**MEMORANDUM DECISION AND ORDER - 1**

review from the Appeals Council and, on November 28, 2018, the Appeals Council denied

Petitioner's Request for Review, making the ALJ's Decision the final decision of the

Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner filed the instant action on

January 15, 2019, arguing that the ALJ's disability determination was erroneous and contrary to

applicable standards of law.  *See generally* Pet. for Review (Dkt. 1).  In particular, Petitioner

claims that "[a]ll of the medical evidence, and specifically the only psychological examination,

finds that [he] is unable to maintain work due to his psychiatric conditions."  Pet.'s Brief, p. 10

(Dkt. 15).  Petitioner therefore requests that the Court either reverse the ALJ's Decision and find

that he is entitled to disability benefits or, alternatively, remand the case for further proceedings.

*See id.* at p. 12; *see also* Pet. for Review, p. 2 (Dkt. 1).

## II.  <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence

and based on proper legal standards.  *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*,

981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

Findings as to any question of fact, if supported by substantial evidence, are conclusive.  *See* 42

U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual

decisions, they must be upheld, even when there is conflicting evidence.  *See Hall v. Sec'y of*

*Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401

(1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993).  The standard is fluid and

nuanced, requiring more than a scintilla but less than a preponderance (*see Sorenson v.*

*Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v.*
*Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the entire record to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed or remanded for legal error. *See Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, to be clear, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. <u>DISCUSSION</u>

**A.    Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§

404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  *See* 20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  *See* 20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner "has not engaged in substantial gainful activity since July 1, 2016, the amended alleged onset date."  (AR 22).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  *See* 20 C.F.R. §§ 404.1521, 416.921.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner has the following

**MEMORANDUM DECISION AND ORDER - 4**

medically determinable impairments: "attention deficit disorder, mood disorder, somatic symptom disorder, and obesity." (AR 22-23).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See id*. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 23-24).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *See* 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. On this point, the ALJ concluded:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: his sitting is limited to 30 minutes at a time, 2 hours total in an 8-hour workday; he can frequently push and pull with his right upper extremity; he can occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; he can never climb ropes, ladders, or scaffolds; he can have no exposure to vibrations or hazards (unprotected heights, moving mechanical parts); and he is

**MEMORANDUM DECISION AND ORDER - 5**

limited to unskilled and semi-skilled work, with only occasional, superficial contact
with the public, supervisors, and coworkers.

(AR 24).

In the fifth and final step, if it has been established that a claimant can no longer perform

past relevant work because of his impairments, the burden shifts to the Commissioner to show

that the claimant retains the ability to do alternate work and to demonstrate that such alternate

work exists in significant numbers in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th

Cir. 1993).  Here, the ALJ found that Petitioner "is capable of performing past relevant work as a

lubrication servicer" and that such work "does not require the performance of work-related

activities precluded by the claimant's residual functional capacity."  (AR 29).[1]  Therefore, based

on Petitioner's age, education, and RFC, the ALJ concluded that Petitioner "has not been under a

disability, as defined in the Social Security Act, from July 1, 2016, through the date of this

decision."  (AR 29) (internal citation omitted).

**B.    Analysis**

The ALJ's disability decision follows a straightforward "logical construct," unfolding as

follows:  (1) if Petitioner was previously able to work while suffering from certain medical

impairments (pre-onset date); and (2) those medical impairments have not worsened over time,

but have actually improved (post-onset date); then (3) Petitioner is similarly able to work as he

---

[1]  The ALJ also asked Mr. Gendreau, the impartial vocational expert, to consider a
hypothetical question involving an individual with Petitioner's age, education, past relevant
work, and the above-referenced RFC, alongside the additional limitations of simple, routine,
repetitive tasks with a reasoning level of 2 or less, no contact with the public, and only
occasional, superficial contact with supervisors and coworkers, with no collaborative tasks.  *See*
(AR 29).  Mr. Gendreau identified the jobs of marker and small products assembler as work for
such an impaired hypothetical individual.  *See id*.  ("Thus, in the alternative, even if I were to
find the claimant more limited and unable to do his past relevant work, he still would not be
found disabled at Step 4.").

**MEMORANDUM DECISION AND ORDER - 6**

had before and, thus, is not disabled under the Social Security Act.  *See* (AR 25-29).  On this

point, the ALJ states:

> I am compelled to find against the claimant by a simple logical construct – he
> sustained work as recently as mid-2016, and his medical impairments have
> admittedly not worsened since the time when he was working, therefore he remains
> as capable of work as he was when he was sustaining work.  It is undisputed that
> he was able to sustain substantial gainful activity from mid-2015 to mid-2016 as a
> lube technician, and that job ended because of his ruptured biceps tendon, which
> was promptly repaired and is not a severe impairment.  The claimant testified that
> nothing about his conditions has changes since he stopped working other than the
> tendon repair, and when asked whether he could return to that work now, he said
> he could try, but he has not been offered a position.  In fact, he acknowledged his
> pain is less now than it was when he was working.  I recognize the claimant has
> abrasive character features and a somatic focus, but these are long-standing issues
> that do not appear to have changes substantially over time, so there simply is no
> apparent reason why he could not do his most recent past relevant work.  Although
> some of his medical treatment notes indicate the same kind of extremely abrasive
> behavior, that does not seem to have changed over time, and he was evidently able
> to control himself well enough to comply with physical therapy and treatment
> providers in connection with his right biceps tendon rupture.  This suggests he is
> able to control his personality defects when necessary to get something he wants.

(AR 25-26) (internal citation omitted).

Petitioner takes issue with the ALJ's approach in the above-noted respect, pointing out

that a tolerant employer who "liked or even encouraged" his confrontational nature with

customers "is not evidence of his ability to maintain other work absent such a bizarre special

circumstance."  Pet.'s Brief, p. 8 (Dkt. 15) (stating further that "[i]t is a bizarre, special

accommodation for the Petitioner's personality disorder, and not one which would be normally

granted in other employment.").  To prove his point, Petitioner argues that the ALJ improperly

disregarded the opinions from Marie Parkman, PsyD., the psychologist/examiner who conducted

the only psychological examination within the relevant period.  *See id*. at pp. 5, 9-11.  The

undersigned disagrees.

On December 3, 2016, Dr. Parkman conducted a mental status examination of Petitioner

who, at that time, "allege[d] disability on the basis of sleep issues, memory issues, and pain."

**MEMORANDUM DECISION AND ORDER - 7**

(AR 520).  Within her corresponding "Disability Determination Examination Report," Dr.

Parkman acknowledged that Petitioner:

- "was somewhat loud, flamboyant and boisterous but generally cooperative";

- "has never had any form of mental health treatment";

- "appear[ed] to have mild psychomotor agitation[,] . . . was in constant motion for the entire examination[,] . . . tended to make wide sweeping gestures with his arms and hands[, and] . . . made intermittent eye contact [that was] somewhat intense";

- "presented as hyperactive and impulsive as opposed to anxious";

- "indicated that he knows that he can be abrasive to others and excessively irritable with others";

- "stated that he did not have many [relationships with other people] and that he was not an easy person to get along with";

- "admitted that he had a tendency to be very confrontational if he did not think things were going right"; and

- "stated that he tried to get along with co-workers and that he had no problems talking to people";

(AR 520-21, 23-24, 26-27).  Diagnosing Petitioner with a somatic symptom disorder, attention

deficit disorder, and likely bipolar disorder, Dr. Parkman concluded in relevant part:

> Although his presentation and past might suggest some antisocial traits, it is notable that since he got clean he has only had one misdemeanor ticket in 16 years.  He also has sustained work behavior when able and work was available.  Of special note is that he got a job after VR told him to apply for Social Security benefits because he was too disabled to work.  He is also very distressed about not having work and being self-sufficient.  He also expressed shame about how his family had viewed him when he was committing felonies. Therefore, his abrasiveness, impulsivity, poor judgment, and irritability might be more appropriately due to an ongoing mood disorder as opposed to problems in personality functioning.  In this examination, his very changeable mood could be "steered" by simply agreeing with him or being pleasant or changing the subject which would not be the case if his presentation were due more to personality disorder than mood.

> Obviously, there are a number of different treatments from which Jason might benefit.  He would benefit from further examination for the possible presence of a major mood disorder and treatment for that disorder.  He would benefit from

additional medical evaluation of his back to determine if surgery is an option for him. He would benefit from ongoing pain management. At the present time, he does not have medical insurance to pursue these options. His mood disorder is such that he would be more likely to accept treatment from a general practitioner than a mental health agency. However, given the length of time and chronicity of his ongoing problems, it is likely that his treatment would be in excess of 12 months before he would be a candidate for training or employment.

He answered questions in an open and honest manner and did not appear to exaggerate symptoms. There were no inconsistencies noted throughout the examination.

Jason's psychiatric symptom severity appears to be in the moderate range and he appears to have a major mental disorder. His pain disorder appears to be in the severe range. His limitations appear to be due primarily to his reported mental health problems and medical problems.

If approved, Jason should have a payee to make sure that his basic needs are met. In this examination, he presented as impulsive, having poor judgment, and not being able to organize his affairs effectively.

Jason's ability to perform simple and repetitive tasks is poor. His ability to complete detailed and complex tasks is poor. His ability to accept instructions from a supervisor is poor. His ability to interact with coworkers and the public is poor. His ability to sustain an ordinary routine without special supervision is poor. His ability to maintain regular attendance in the workplace is poor. His ability to complete a normal workday/workweek without interruptions from his psychiatric condition is poor. The likelihood of hi[m] emotionally deteriorating in a work environment is significant. His ability to sustain his effort on tasks over time is poor as well as his ability to adjust quickly and flexibly to workplace demands. His ability to learn new job tasks quickly and efficiently is poor.

(AR 527-28).

The ALJ agreed with Dr. Parkman only insofar as indicating that Petitioner's attention deficit disorder, mood disorder, and somatic symptom disorder constitute severe impairments. *See* (AR 22). However, the ALJ gave "little weight" to the balance of Dr. Parkman's opinions (that is, those reflecting – at least in Petitioner's mind – that Petitioner "was unable to work and was unemployable" (Pet.'s Brief, p. 9 (Dkt. 15)), concluding:

As this examiner noted, the claimant's presentation at her exam had been his presentation for many years, yet he was able to engage in substantial gainful activity as recently as June 2016. I find no evidence of worsening of the claimant's

**MEMORANDUM DECISION AND ORDER - 9**

> condition since he was working, and his testimony does not suggest any worsening.
> This examiner's opinion thus does not match reality.

(AR 27).  Petitioner argues that the ALJ's dismissal of Dr. Parkman's impressions is not

supported by substantial evidence.  *See* Pet.'s Brief, p. 10 (Dkt. 15) ("All of the medical

evidence, and specifically the only psychological examination, findings that the Petitioner is

unable to maintain work due to his psychiatric conditions.").

The undersigned is not persuaded.  The ALJ is responsible for resolving ambiguities and

conflicts in the medical testimony.  *See Magallanes*, 881 F.2d at 750.  While the medical opinion

of a treating physician is entitled to special consideration and weight, it is not necessarily

conclusive.  *See Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).  If the treating

physician's opinions are not contradicted by another doctor, they may be rejected only for clear

and convincing reasons.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Lester v.

Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Even if the treating physician's opinions are

contradicted by another doctor, they can only be rejected if the ALJ provides specific and

legitimate reasons for doing so, supported by substantial evidence in the record.  *See id*.  A lack

of objective medical findings, treatment notes, and rationale to support a treating physician's

opinions is a sufficient reason for rejecting that opinion.  *See Chaudhry v. Astrue*, 688 F.3d 661,

671 (9th Cir. 2012); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  Additionally, the

ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies

between their opinions and other evidence in the record, or other factors the ALJ deems material

to resolving ambiguities.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th

Cir. 1999).

Here, Dr. Parkman's opinions are not uncontradicted.  *See, e.g.*, (AR 28) (citing (AR 74-

87, 89-104) (state agency reviewing medical consultants, Mack Stephenson, PhD., Michael

**MEMORANDUM DECISION AND ORDER - 10**

Spackman, MD., Michael Dennis, PhD., and Lee Lindquist, M.D., separately opine that, while

Petitioner does have medically-determined mental health impairments, he is not disabled)).

Therefore, the ALJ needs specific and legitimate reasons for challenging Dr. Parkman's

opinions, but no more than that.  *See Moore v. Comm'r of Soc. Sec. Admin.*, 279 F.3d 920, 924

(9th Cir. 2002) ("The ALJ could reject the opinions of Moore's examining physicians,

contradicted by a nonexamining physician, only for 'specific and legitimate reasons that are

supported by substantial evidence in the record.'") (quoting *Lester v. Chater*, 81 F.3d 821, 830-

31 (9th Cir. 1995)).  The ALJ met this standard.

   Petitioner's understood personality impairments have been an unchanging constant over

time, straddling his amended alleged onset date.  Yet, Petitioner has worked during this time and

has done so despite those same limitations (even if under somewhat unusual circumstances).  *See*

*supra*.  This reality necessarily calls into question Dr. Parkman's claim that Petitioner is

altogether incapable of sustained work activity and, in and of itself, represents a specific and

legitimate reason for discounting her contrary opinions.  *See* (AR 28) (ALJ stating that

Petitioner's "personality dysfunction has been long-standing but the claimant proved this

dysfunction does not preclude him from sustaining substantial gainful activity by working from

March 2015 through June 2016").  Similarly, Petitioner received unemployment compensation

benefits subsequent to the amended alleged onset date; as the ALJ noted, "[i]n order to receive

those benefits, the claimant had to attest that he was ready, willing, and able to work," which "is

inconsistent with his assertion that he is disabled."  (AR 25-26) (citing (AR 242)).  Finally,

nothing in the record indicates that Petitioner ever received any mental health treatment for his

mental health problems.  Indeed Petitioner himself does not even believe he needs mental health

treatment.  *See* (AR 26) (ALJ stating:  "The fact that the claimant received no mental health

treatment for his mental health problems is inconsistent with his allegations that they are

**MEMORANDUM DECISION AND ORDER - 11**

disabling.  If the claimant's mental health problems were not severe enough to motivate him to seek treatment, it is difficult to accept his assertion that they are disabling.").[2]

With all this in mind, it is clear that Petitioner suffers from several impairments (acknowledged as "severe" by the ALJ (*see* (AR 22)) that impact his ability to work.  However, the ALJ provided specific, legitimate, reasons for rejecting or questioning certain opinions contained in the medical record.  It follows that the ALJ would not give those opinions the weight Petitioner argues that they deserved, but, importantly, such opinions clearly were considered in the context of the surrounding record.

This Court's review does not extend to resolving the conflicting opinions and ultimately deciding whether Petitioner is once-and-for-all disabled as that term is used within the Social Security Act.  Rather, this Court must decide whether the ALJ's determination that Petitioner is not disabled is supported by the record.  In this record, there are conflicting medical opinions, testimony, and accounts that inform the ALJ's decisions on how to consider the various opinions. The ALJ decided to discount certain opinions, while crediting others – keeping in mind the fact that Petitioner's conditions have not prevented him from working before.  In short, the ALJ's Decision is supported by clear and convincing, specific, and legitimate reasons.  Hence, because the evidence can reasonably support the ALJ's conclusions in these respects, this Court will not substitute its judgment for that of the ALJ's even if this Court were to have a different view.  *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.[3]

---

[2]  These factors also combine to justify the ALJ's credibility determination, to the extent Petitioner claims he cannot work due to his mental impairment(s).  *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (to reject claimant's testimony, ALJ must make specific findings stating clear and convincing reasons for doing so) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

[3]  It should be mentioned again that, during the February 14, 2018 hearing, the ALJ posed a separate hypothetical question to Mr. Gendreau with *additional* limitations relating to

**MEMORANDUM DECISION AND ORDER - 12**

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

The evidence can reasonably and rationally support the ALJ's well-formed conclusions, even though such evidence may be susceptible to a different interpretation.  Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence.  Therefore, the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

## V.  ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety, with prejudice.

DATED: May 14, 2020

Ronald E. Bush
Chief U.S. Magistrate Judge

---

Petitioner's alleged (in)abilities to interact with supervisors, coworkers, and the public.  *See* (AR 29).  Even with these more substantial limitations, Mr. Gendreau testified that jobs exist in the national economy for such an impaired hypothetical individual.  *See id.*  Petitioner does not address this circumstance.

**MEMORANDUM DECISION AND ORDER - 13**